UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD DRENNON,<br><br>     Plaintiff,<br><br> v.<br><br>IDAHO BOARD OF CORRECTION (IBOC); IDAHO DEPARTMENT OF CORRECTION (IDOC); BREE DERRICK, Director of the IDOC; UNKNOWN IBOC AND IDOC EMPLOYEES JOHN AND JANE DOES 1 through 10; INMATE CALLING SOLUTIONS, LLC, d/b/a ICSOLUTIONS (ICS); and UNKNOWN ICS EMPLOYEES JOHN AND JANE DOE 1 through 5,<br><br>     Defendants. | Case No. 1:25-cv-00216-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Richard Drennon's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

## 1.    Standards of Law for Screening Complaints

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable

legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## 2.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). For several years, IDOC inmates have been allowed to use electronic tablets, known as JPay tablets, for communication and other uses. *Compl.*, Dkt. 3, at 2.

Plaintiff is an elderly inmate with diabetes and severe neuropathy. Over the past four years, Plaintiff has acquired many items and files that he currently keeps on his JPay tablet, including emails, music, games, photos, copies of concern forms and grievance forms, and legal files and research. *Id*. at 4.

Plaintiff states that because of his neuropathy pain, he cannot write with a pen or pencil. Instead, he uses the "keyboard" application on his JPay tablet.

The IDOC announced that it would be switching from the JPay tablets to a new communications technology known as ViaPath. The ViaPath tablets will be provided by Inmate Calling Solutions, LLC ("ICS"). The JPay tablets will soon be obsolete and will eventually stop working. *Ex. to Compl*., Dkt. 3-2, at 4. In

announcing the change of technology, the IDOC informed inmates that each inmate would receive a new ViaPath tablet, as well as a set of earbuds, at no charge. *Id*.

Plaintiff contends that the change in tablets will cause him to lose all of the emails, music, games, photos, and files that he currently has on his JPay tablet. *Compl*. at 3–4. Plaintiff also complains that he will no longer have access to the JPay keyboard app, but there is nothing in the Complaint to suggest that the new ViaPath tablets will not have a similar typing function. *Id*. at 4–7. Though the ViaPath tablets are not compatible with external keyboards, *see Ex. to Compl*., Dkt. 3-2, at 7, they may well have a touchscreen keyboard or another type of keyboard application.

The attachments to Plaintiff's Complaint reveal that the IDOC has communicated with inmates and informed them how to preserve the information on their JPay tablets. Such items will be placed on a flash drive and mailed to an inmate's home address. *See id*. at 5. Inmates have also been also instructed that, if they want to have their photos and messages on the new ViaPath tablets instead of delivered to their home address on a flash drive, they must ask the person who originally sent the photos or messages to resend them after the new tablets are operational. *Id*. at 8.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

Plaintiff contends that the IDOC has improperly appropriated the funds used to purchase the new technology. Plaintiff claims that former IDOC Director Josh Tewalt "created a joint venture [with ICS] to scam, defraud and/or outright usurp the 'Inmate Management Fund' that's controlled by the Idaho Legislature, out of millions of dollars." *Compl*. at 5.

Finally, Plaintiff claims that non-defendant Dr. Wilks has not appropriately treated Plaintiff's neuropathy. Dr. Wilks changed Plaintiff's medication from gabapentin to Lyrica, and Plaintiff claims the new medication is insufficient to treat his pain. *Id*. at 6.

Plaintiff asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., as well as claims of constitutional violations under the federal civil rights statute, 42 U.S.C. § 1983.

## 3.    Discussion

Plaintiff has not stated a claim upon which relief may be granted. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

### A.    *ADA Claims*

The ADA generally prohibits discrimination on the basis of an individual's disability. In order to proceed with an ADA claim, a plaintiff must plausibly allege (1) that he has a disability; (2) that he is otherwise qualified to participate in or

receive a public entity's services, programs, or activities; (3) that he was denied the benefits of those services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was *by reason of* his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Under the ADA, the governmental entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution. But an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008).

Plaintiff's ADA claims appear to be based on his inability to write with a pen or pencil and his need to have some sort of keyboard with which to type. The Ninth Circuit has held that "[p]roviding inmates with appropriate and adequate bedding and bathroom facilities are 'services' of [a] jail" for purposes of the ADA. *Id*. at 1224. Therefore, the Court will assume, without deciding, that a handicap-accessible means of writing or typing is also a service under the ADA.

However, there is nothing in the Complaint to suggest that the new ViaPath tablets will not be handicap-accessible to Plaintiff. The new tablets serve the same functions as the JPay tablets, and there is no plausible reason set forth in the Complaint to suspect that inmates will not be able to type on the new tablets. Therefore, Plaintiff has not stated a claim on which relief may be granted under the ADA.

### B.     Section 1983 Claims

To state a plausible civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

That is, prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does

not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

i.     Due Process Claims

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459–60 (1989). Liberty interests are generally limited to freedom from restraint. Because prisoners' liberty is necessarily circumscribed as a result of conviction and incarceration, prisoners possess a protected liberty interest only if a change occurs in their confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff contends that losing the information and items on his JPay tablet will deprive him of a liberty interest. The Court has found no precedent establishing that losing access to photos, emails, music, games, copies of documentation, or legal research constitutes an atypical and significant hardship as required by *Sandin*. Plaintiff's physical liberty is not restrained at all—he simply does not want to change tablets. The potential loss of Plaintiff's messages, photos, games, music, and electronic copies of documents is inconvenient, but it is not an atypical and significant hardship in relation to the ordinary incidents of prison life. Accordingly, Plaintiff's due process claims are implausible.

ii.        Equal Protection Claims

The Fourteenth Amendment guarantees equal protection of the law. The

purpose of the Equal Protection Clause is "to secure every person within the

State's jurisdiction against intentional and arbitrary discrimination, whether

occasioned by express terms of a statute or by its improper execution through duly

constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)

(internal citation and quotation marks omitted). Under the Equal Protection Clause,

"all persons similarly circumstanced shall be treated alike" by governmental

entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However,

"[t]he Constitution does not require things which are different in fact or opinion to

be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141,

147 (1940).

Even where similarly situated persons are treated differently by the state,

"state action is presumed constitutional and 'will not be set aside if any set of facts

reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271

(9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)).

Absent evidence of invidious discrimination, the federal courts should defer to the

judgment of prison officials. *See id.* at 277; *Youngbear v. Thalacker*, 174 F. Supp.

2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an

individual's right to equal protection.... There is no evidence from which the court

may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 440 (1985). However, because inmates are not a protected class under the Equal Protection Clause, their equal protection claims are generally subject to rational basis review. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998).

In a rational basis analysis, the relevant inquiry is whether the defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). A plaintiff can prevail under rational basis review only if (1) the plaintiff is similarly situated with persons who are treated differently by a governmental official, and (2) the official has no rational basis for the disparate treatment. Moreover, an additional layer of deference to prison officials is required under *Turner v. Safley*, 482 U.S. 78 (1987). *Turner* holds that a prison regulation or prison official's action is constitutional so long as it is reasonably related to a legitimate penological interest. *Id*. at 89; *see Walker v. Gomez*, 370 F.3d 969, 974

(9th Cir. 2004) ("In the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests." (quotation omitted)).

Plaintiff contends that his equal protection rights will be violated by the change in tablet technology because he is "unable to afford the expenses involved with using the new 'communications technology.'" *Compl*. at 7. Because indigence, or poverty, is not a suspect classification for purposes of an equal protection analysis, *Harris v. McRae*, 448 U.S. 297, 323 (1980), this claim is subject only to rational basis review.

The Complaint does not plausibly suggest that the IDOC's change from JPay to ViaPath tablets is not rationally related to a legitimate penological interest. The older tablets are becoming obsolete, and IDOC has determined that the new ViaPath tablets are sufficient to meet the needs of the IDOC and of the inmate population. Contrary to Plaintiff's contention, the IDOC is not required to update or repair the JPay tablets rather than bringing in a new technology. *See Compl*. at 6–7. Without specific allegations establishing that the decision to change technologies was arbitrary or irrational, the Complaint does not raise a plausible inference that Plaintiff's equal protection rights are being violated.

iii.    Access to Courts Claims

Under the First and Fourteenth Amendments, prisoners have a right to
access the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), which guarantees
them the opportunity to pursue "lawsuits challenging their sentences or the
conditions of their confinement to conclusion without active interference by prison
officials," *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) (emphasis
omitted), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759
(2015). However, because the right of access to the courts is not an "abstract,
freestanding right to a law library or legal assistance, an inmate cannot establish
relevant actual injury simply by establishing that his prison's law library or legal
assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S.
343, 351 (1996).

Instead, a complaint alleging a denial of access to the courts must plausibly
allege that the plaintiff suffered, or will suffer, the loss of a past or present
litigating opportunity. The plaintiff must assert facts supporting three elements:
(1) official acts that caused the frustration of the inmate's litigation activities;
(2) the loss (or expected loss) of a "nonfrivolous" or "arguable" underlying claim
that must be set forth in the federal complaint, including the level of detail
necessary "as if it were being independently pursued"; and (3) that the remedy

sought through the access to courts claim is not otherwise available in another suit that could be brought. *Christopher v. Harbury*, 536 U.S. 403, 415–17 (2002).

The Constitution does not require that inmates "be able to conduct generalized research," nor does it "guarantee inmates the wherewithal to transform themselves into litigating engines." *Lewis*, 518 U.S. at 355, 360. Rather, the right of access to the courts requires only that inmates "be able to *present* their grievances to the courts—a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360 (emphasis added). That is, there is no constitutional right for a prisoner to be able "to litigate effectively once in court." *Id*. at 354 (emphasis omitted).

Plaintiff asserts that the potential loss of the information on his JPay tablet, presumably the copies of legal files and legal research in particular, violates his right to access the courts. However, the loss of such general information is insufficient to plausibly support an access-to-courts claim. *See Lewis*, 518 U.S. at 355, 360. Instead, a plaintiff asserting such a claim must plausibly allege an actual injury to the right of access and must set forth the lost claim with particularity. *See Christopher*, 536 U.S. at 415–17. The Complaint here simply does not do so. Thus, Plaintiff's access-to-courts claims are implausible.

iv.    <u>Sixth Amendment Claims</u>

Plaintiff also cites the Sixth Amendment. However, that amendment—which protects a criminal defendant's right to a speedy and public trial by an impartial jury, the right to confrontation and compulsory process, and the right to the assistance of counsel—is not implicated by the allegations in the Complaint. Plaintiff should therefore omit his Sixth Amendment claims from any amended complaint.

v.    <u>Eighth Amendment Claims</u>

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment and guarantees prisoners minimally adequate conditions of confinement. "[T]he Constitution does not mandate comfortable prisons, and prisons … which house persons convicted of serious crimes[] cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, though prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347; *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, a prisoner must show that he is (or was) "incarcerated under conditions posing a substantial risk of serious

harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Whitley*, 475 U.S. at 319 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (internal quotation marks and alteration omitted).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be

cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d 1060. Moreover, even prison officials who *did* actually know of a substantial risk to inmate health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

### a)    *Loss of Information and Items on JPay Tablet*

Plaintiff claims that the loss of the information and items on his JPay tablet violates the Eighth Amendment. Because this claim does not allege Plaintiff is at a substantial risk of serious harm, the Court must consider whether such information and items can be deemed "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.

The Court concludes, as a matter of law, that Plaintiff's JPay information and items are not such necessities. Items such as radios, televisions, and video games are luxuries and, as such, are not required by the Constitution. *See, e.g., James v. Milwaukee* County, 956 F.2d 696, 699 (7th Cir. 1992) (denial of television does not constitute a cognizable civil rights claim); *Murphy v. Walker*, 51 F.3d 714, 718, n. 8 (7th Cir. 1995) (per curiam) (same); *Gladson v. Rice*, 862 F.2d 711, 713 (8th Cir. 1988) (same); *Montana v. Commissioners Court*, 659 F.2d 19, 23 (5th Cir. 1981) ("The claims relating to the usage of radio and television were properly dismissed as frivolous. These claims do not pertain to federal constitutional rights."); *Manley v. Fordice*, 945 F. Supp. 132, 136-37 (D. Miss. 1996) ("[T]here is simply no right to television while incarcerated .... [S]uch items are *luxuries*, and any allowance of them in prisons is merely an altruistic act on the part of the Department of Corrections."); *see also Rawls v. Sundquist*, 929 F. Supp. 284, 291 (M.D. Tenn. 1996), *aff'd*, 113 F.3d 1235 (6th Cir. 1997) (no equal protection violation where death row inmates were denied satellite television because that denial "is within the wide-ranging discretion granted  to prison administrators and does not impinge the Inmate Plaintiffs' constitutional rights"); *Schloss v. Ashby*, 2011 WL 4804868, *4 (C.D. Ill. 2011) ("Humane treatment means the adequate provision of life's basic necessities, not luxuries such as gaming consoles and other electronic equipment."); *Belton v. Singer*, 2011 WL

2690595 (D.N.J. July 8, 2011) (unpublished) (sexually violent predator civil detainees have no First or Fourteenth Amendment right to use memory sticks, flash drives, thumb drives, external drives, data storage devices, X-box Elite, Play Station 3, or Wii gaming system); *Hedgepeth v. Bartow*, 2010 WL 2990807 (W.D. Wis. July 27, 2010) (no First Amendment right to possess video games or game systems).

Access to photos, messages, music, and electronic copies of documents are similar luxuries. Accordingly, the Complaint does not state a plausible Eighth Amendment claim with respect to the potential loss of information and items on Plaintiff's JPay tablet.

### b)      *Claims of Inadequate Medical Treatment*

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are

'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the

following ways:

> failure to treat a prisoner's condition [that] could result in
> further significant injury or the unnecessary and wanton
> infliction of pain[;] ... [t]he existence of an injury that a
> reasonable doctor or patient would find important and
> worthy of comment or treatment; the presence of a
> medical condition that significantly affects an
> individual's daily activities; or the existence of chronic
> and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations

omitted), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d

1133 (9th Cir. 1997) (en banc).

In the medical context, deliberate indifference can be "manifested by prison

doctors in their response to the prisoner's needs or by prison guards in intentionally

denying or delaying access to medical care or intentionally interfering with the

treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted).

Medical malpractice or negligence does not support a cause of action under the

Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)

(per curiam).

"There is not one proper way to practice medicine in a prison, but rather a

range of acceptable courses based on prevailing standards in the field." *Jackson v.

Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted).

Accordingly, mere differences in judgment as to appropriate medical diagnosis and

treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Plaintiff's claim that non-Defendant Dr. Wilks chose a different pain medication and dosage than what Plaintiff prefers rests on a mere disagreement as to appropriate medical treatment, which is insufficient to support an Eighth Amendment claim. *See Sanchez*, 891 F.2d at 242; *Toguchi*, 391 F.3d at 1058. The Complaint does not plausibly allege that any Defendant acted with deliberate indifference to Plaintiff's serious medical needs. Plaintiff may attempt to remedy this deficiency in an amended complaint.

vi.    Claims against the IDOC and the Idaho Board of Correction

Plaintiff's § 1983 claims against the IDOC and the Idaho Board of Correction ("IBOC") are implausible because states and state entities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, even if the IDOC and IBOC were considered "persons" under § 1983, they would be immune from suit in federal court under the Eleventh Amendment. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Plaintiff should omit any § 1983 claims against these entities in any amended complaint.

vii.    Claims against ICS

Plaintiff's § 1983 claims against ICS are implausible because the Complaint did not establish that ICS is acting "under color of" state law. 42 U.S.C. § 1983.

Section 1983 does not provide a remedy for purely private conduct, "no matter how unfair that conduct may be." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988).

A private party can be subject to suit under § 1983 for violating a plaintiff's civil rights only in narrow circumstances. "[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted). The Supreme Court has identified several contexts in which a private party can be considered a state actor for purposes of a civil rights action. These include the following situations: (1) the private party's action results from the state's "exercise of coercive power" or "significant encouragement"; (2) the private party participates in "joint activity" with the state; (3) the private party is "controlled by an agency of the State"; (4) the private party "has been delegated a public function by the State"; and (5) the private party is "entwined with governmental policies," or "the government is entwined in [the private party's] management or control." *Id.* at 296 (internal quotation marks omitted).

The only context potentially implicated by the allegations in the Complaint is the public function context. To constitute state action, however, the function delegated to the private party cannot be just any function. Rather, "[t]he public

function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011) (internal quotation marks omitted). For example, in *West v. Atkins*, the Supreme Court found state action on the part of a private physician providing medical treatment to prisoners because (1) "the State bore an affirmative obligation to provide adequate medical care" to prisoners; (2) "the State delegated that function" to the physician; and (3) the physician "voluntarily assumed that obligation by contract." 487 U.S. 42, 56 (1988).

Unlike providing medical care to incarcerated individuals, providing and maintaining a telecommunications system is not a function that is traditionally and exclusively performed by the government. *See Florer*, 639 F.3d at 924. Thus, the Complaint does not permit a reasonable inference that ICS "is a state actor such that any action taken by [it] is 'fairly attributable' to a public entity." *Venegas v. Bianco*, 2019 WL 10301094, at *9 (C.D. Cal. Aug. 26, 2019) (holding that an employee of Keefe Commissary Network was not a state actor) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–43 (1982)).

## C.    State Law Claim

In addition to § 1983 claims, Plaintiff asserts a state law claim that IDOC committed fraud by using taxpayer monies from the Inmate Management Fund to purchase ViaPath tablets from ICS.

To state a case or controversy under Article III of the Constitution, a plaintiff must have standing to bring the suit. The minimum constitutional requirements for standing are as follows:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations, and alterations omitted). The plaintiff bears the burden of establishing standing. *Id*. at 561.

Plaintiff's fraud claim is implausible because Plaintiff lacks standing. Plaintiff does not allege that he himself was defrauded, but rather that the IDOC defrauded the state legislature and the taxpayers. However, standing generally

"cannot be based on a plaintiff's mere status as a taxpayer." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011).

A narrow exception to the prohibition on taxpayer standing exists when there is (1) a "logical link" between the plaintiff's status as a taxpayer and the type of statute the plaintiff challenges, and (2) a "nexus" between the plaintiff's status as a taxpayer and the precise nature of the constitutional infringement alleged." *Id*. at 138 (internal quotation marks omitted). Accordingly, a taxpayer may have standing to challenge, on Establishment Clause grounds, a statute allowing expenditures of Treasury funds to support religious schools or programs. *Flast v. Cohen*, 392 U.S. 83, 85–88 (1968).

The Complaint in this case does not establish the type of special circumstances sufficient to fit the narrow exception to the prohibition on taxpayer standing.

Further, even if Plaintiff could establish standing, there is nothing in the Complaint to plausibly suggest that the Inmate Management Fund was not the appropriate fund for the IDOC to use to purchase the ViaPath tablets. Accordingly, Plaintiff's fraud claims are implausible.

Finally, because the Complaint fails to state a federal claim upon which relief may be granted, the Court would decline to exercise supplemental jurisdiction over Plaintiff's fraud claim in any event. *See* 28 U.S.C. § 1367(c).

4.     **Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and alteration omitted).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or statutory provision Plaintiff

alleges has been violated; (6) facts alleging the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of an Eighth Amendment or due process claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate, numbered paragraph. The amended complaint must be legibly written or typed in

its entirety, and it should be clearly designated as an "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.   The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[1]

---

[1] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).

2.    If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice for failure to state a claim upon which relief may be granted, failure to prosecute, or failure to comply with a Court order. *See* 28 U.S.C. §§ 1915 and 1915A; Fed. R. Civ. P. 41(b).

3.    Because an amended complaint is required for Plaintiff to proceed, Plaintiff's Motion for Temporary Restraining Order (Dkt. 8) is DENIED as MOOT.

DATED: May 9, 2025

B. Lynn Winmill
U.S. District Court Judge